54

**UNION TRUST CO. OF INDIANAPOLIS v. UNITED STATES.**

No. 9665.

United States Court of Appeals
Seventh Circuit.

March 2, 1949.

Theron L. Caudle, Asst. Atty. Gen., Hilbert P. Zarky, Atty., U. S. Dept. of Justice, of Washington, D. C., and B. Howard Caughran, U. S. Atty., of Indianapolis, Ind., Ellis N. Slack, A. F. Prescott and Robert M. Weston, Sp. Asst. to Atty. Gen., for appellant.

Lucien L. Dunbar, Merlin M. Dunbar and Foreman D. McCurdy, all of Indianapolis, Ind., for appellee.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff filed a petition in the District Court praying for a judgment of $3,730.14 which it claimed was due it as a refund from the federal income taxes it paid for the year 1939. After making findings of fact with its legal conclusions thereon, the court entered judgment for plaintiff, and defendant has appealed.

The plaintiff-taxpayer is a bank located in Indianapolis, Indiana. As part of its functions during the period in question, plaintiff operated a bond department through which it bought corporate and governmental bonds for the purpose of resale to customers. By stipulation it was agreed between the parties that, beginning with the taxable year 1921 and up to and including the taxable year 1939, plaintiff with the approval of the Commissioner of Internal Revenue filed its income tax returns with respect to its securities on the inventory basis. The inventory was valued at the end of each year at cost or market, whichever was lower. Once the value of a given security was reduced on the inventory set out in the income tax return, the reduced value was thereafter treated as cost. These inventories setting out the tax returns were used in computing the cost of gross sales and gross profits from the sales of securities, but plaintiff during the period in question also kept a security ledger in which it recorded the purchase date, description and the purchase price of each individual security.

The stipulation included an Exhibit 2 which listed certain issues of bonds which were part of the plaintiff's inventory for income tax purposes. These bonds were acquired prior to 1939, and were sold or redeemed during 1939 at a profit over their inventory value. In the years 1932, 1933 and 1937 plaintiff incurred substantial losses which were recorded in its income tax returns. During these three years the values of certain of the Exhibit 2 bonds were reduced. From the record it is clear that the losses incurred by plaintiff during the

years in question exceeded its gross inventory reductions or write-downs. From this it is apparent that with or without the inventory reductions plaintiff would have incurred no income tax during these years. In 1939 when it redeemed or sold the bonds listed in Exhibit 2 the amount received therefrom was $34,055.76 more than the latest previous inventory valuation. Of this amount, $22,335.76 arose from inventory reductions in plaintiff's loss years. (It is conceded that this amount is less than the inventory reductions in the loss years, because in 1939 the amount received for the bonds was less than the amounts of the inventory reductions.) Plaintiff claims that the amount of $22,335.76 is excludable from income subject to tax on the ground that it represents recoveries on bad debts and bonds in tax loss years which revenues in 1939 were improperly included as income.

In seeking to reverse, defendant argues that the court erred in finding and concluding that the reductions in inventory value of the bonds in question were bad debts, and the corollary, that the amounts received for the bonds in 1939, to the extent of inventory reductions in loss years, did not constitute taxable income. It contends that since 1921 plaintiff, for income tax purposes, has used the inventory method of accounting; that the bonds in Exhibit 2, being part of the inventory, so far as written down, are not proper tax deductions because inventories are merely a factor in computing cost of goods sold and are not additions or deductions from taxable income; that write-downs of particular inventory items are neither bad debts nor deductions from gross income.

Although plaintiff concedes that during the period in question it filed its income tax returns on the inventory basis, it counters with the argument that its own accounting system whereby it kept its books was not the inventory system, but rather the system of recording the purchase and sale of every bond with a detailed description in its securities ledger and the system of writing down its bonds. On this point there is basically no dispute between the parties. They agree that the income tax returns in regard to the securities were filed on the inventory basis. Moreover, in the light of Treasury Regulations 103, § 19.22(c)-5, there could be no dispute, because as stated in the regulation: "A dealer in securities in whose books of account separate computations of the gain or loss from the sale of the various lots of securities sold are made on the basis of the cost of each lot shall be regarded, for the purposes of this section, as regularly inventorying his securities at cost."

By authority of the same regulation a taxpayer who purchases securities for resale to customers at a profit is defined as a merchant of securities in contradistinction to a taxpayer who buys and sells securities for investment or speculation.

By its stipulation plaintiff must be designated as a merchant of securities. On its 1939 income tax return plaintiff showed its gross income as the difference between its gross sales and the cost of goods sold. These are proper entries in determining gross income from a merchandising business, which plaintiff was for this purpose, but "substractions should not be made for depreciation, depletion, selling expenses, or losses, or for items not ordinarily used in computing the cost of goods sold." Treasury Regulations 103, § 19.22(a)-5.

The court found that the bonds listed in Exhibit 2 were bad debts to the extent to which they were written down; that despite the fact that they were not reported as bad debts in the tax returns, they were bad debts which reduced plaintiff's gross profit and thus were proper deductions from plaintiff's taxable income. The effect of this finding is not only contrary to the regulations previously noted, but it also serves to place the amount of prior year write-offs on particular inventory items to the heading of "Bad debts" which the taxpayer itself did not do in its returns of 1932, 1933 and 1937.

The method of accounting for income tax purposes adopted by plaintiff and acceded to by the Commissioner during the years in question was that of the inventory basis. An inventory is a list of articles on hand. Burroughs Adding Machine Co. v. Commissioner, 9 B.T.A. 938, 943. Individual items in the list cannot be traced or kept apart from the other items, but that is

what plaintiff has attempted to do. It seeks to itemize and trace through prior years the Exhibit 2 bonds which are part of the general inventory and refigure these particular Exhibit 2 bonds which, for income tax purposes, have lost their individual identity in the general inventory.

Plaintiff strongly urges that the controlling statute is § 22(b) (12) of the Internal Revenue Code, 26 U.S.C.A. § 22(b) (12), and that it authorizes plaintiff to exclude the recoveries made on the separate bond issues of Exhibit 2, because it previously had written down these securities and had received no tax benefit therefrom. The Revenue Act of 1942, § 116(a), added § 22(b) (12), which was made retroactive to prior years. In enumerating specific exclusions from gross income Congress provided that income attributable to the recovery of a bad debt, prior tax or delinquency amount was not to result in taxable income in the years of recovery to the extent that the prior deductions had failed to produce any tax benefit to the taxpayer. The plaintiff's petition was predicated on the ground that recoveries were made on bad debts which had been charged off in tax loss years. As already stated, we believe the applicable Treasury Regulations preclude any finding that the write-downs were bad debts. Our position is substantiated by § 22(b) (12) itself which defines a bad debt as a "debt on account of worthlessness or partial worthlessness of which a deduction was allowed for a prior taxable year." As approximately 40 percent of the bonds listed in Exhibit 2 were United States Treasury Bonds any allegation that they were worthless or even partially so is a non sequitur. Plaintiff alleged a specific statutory tax exemption which it failed to prove. Under these circumstances, it is clear that the provisions of § 22(b) (12) are not applicable.

In Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, which plaintiff argues is dispositive of this case, Mr. Justice Jackson went to considerable lengths to place the finality of the determinations of the Tax Court upon the same level as that in other administrative fields. The state of facts before the Court was that of a taxpayer who purchased 300 shares of a certain stock. Later he sold 100 shares in each of consecutive years and at a loss. He filed claim for deductible loss in the returns of each of these years and his claims were allowed. Years later he ascertained that he had grounds for rescission of the entire transaction. He sued and received a settlement which was allocable to the 300 shares. The taxpayer in 1939, the year of his recovery, did not report as income any part of the recovery. The Commissioner adjusted the taxpayer's gross income for 1939 by adding as ordinary gain the recovery attributable to the shares sold. It appeared that the recovery upon the shares sold was not sufficient to make good taxpayer's original investment in them. The matter was redetermined by the Board of Tax Appeals which held for the taxpayer that he had received no taxable gain from the recovery. The Court of Appeals held that the recoveries were ordinary income in the year received and vitiated the decision of the Board of Tax Appeals. In the absence of a controlling statute and regulations, the Supreme Court held that the course followed by the Board was final if supported by the evidence. It so found, and declared that the error of the Court of Appeals lay in that it treated another accounting course to follow as one of law. The argument was urged before the Court of the analogous problem raised by recovery of bad debts charged off without tax benefit in prior years. In view of § 22(b) (12), with its specific exceptions which are not found in the facts in the instant case, we fail to see wherein the Dobson case aids plaintiff.

We are well aware of the great weight which must be accorded to the findings of fact of the District Court, but in this case they are clearly erroneous and we cannot sustain them.

The judgment appealed from is reversed with instructions that the petition be dismissed.